1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10    UNITED STATES OF AMERICA,

11            Plaintiff,                    No. 2:11-cv-00967 MCE KJN PS

12        v.

13    APPROXIMATELY $658,830.00 IN
      U.S. CURRENCY,
14
              Defendant.              FINDINGS AND RECOMMENDATIONS
15    _____/

16            Presently before the court is plaintiff's (the "government") Motion To Strike

17    Claim And Answer For Failure To Comply With Supp Rules G(5) And G(6); Alternatively, For

18    Summary Judgment ("Motion") filed in this civil forfeiture action by claimant Robert D. Gibson.

19    (Dkt. No. 77.)[1] Mr. Gibson is proceeding without counsel and is incarcerated at the Salinas

20    Valley State Prison.

21            The government filed its motion pursuant to Rule G(8)(c)(i)(B) of the

22    Supplemental Rules of Admiralty Or Maritime Claims and Asset Forfeiture Actions

23    ("Supplemental Rules"), and requests that this court strike Mr. Gibson's claim and answer, and

24    enter summary judgment for the government on the ground that Mr. Gibson lacks standing.

25    _____

26            [1] This case proceeds before the undersigned pursuant to Eastern District of California Local
      Rules 302(c)(3) and (c)(21), and 28 U.S.C. § 636(b)(1).

1

1  (Memo. In Supp. of Mot. to Strike ("Pl.'s Memo.") at 1, Dkt. No. 77, Doc. No. 77-1.)  Mr.

2  Gibson has filed three written oppositions to the government's Motion.  (Dkt. Nos. 86, 88, 95.)

3  In the interest of clarity, and because the court previously informed Mr. Gibson that it would

4  consider only the last opposition he filed, (Dkt. No. 97), the court herein cites only to Mr.

5  Gibson's third opposition, filed June 18, 2002.  (("Opposition"), Dkt. No. 95).  For the reasons

6  discussed below, the undersigned recommends this court grant the government's motion for

7  summary judgment and, accordingly, strike Mr. Gibson's claim against the defendant property.

8  I.        BACKGROUND[2]

9          A.       Factual Background

10                  On October 8, 2010, Special Agent Brian Fichtner of the California Department of

11  _____

12      [2]  The following recital of facts is taken from the government's Statement of Undisputed
Facts In Support Of Motion To Strike ("SOF") (Dkt. No. 77, Doc. No. 77-2). Mr. Gibson filed three
13  materially deficient briefs in opposition to the government's motion to strike (Dkt. Nos. 86, 86, 95),
all of which failed to comply with Local Rule 260(b)'s requirement that his opposition include an
14  itemized Statement Of Disputed Facts with Mr. Gibson's admission or denial of each fact and
citation to evidence in support of any such denials. See E. Dist. Local Rule 260(b).  On May 24,
15  2012, after Mr. Gibson filed the first two nonconforming opposition briefs, this court sua sponte
filed an order that informed Mr. Gibson of the requirements of Local Rule 260(b) and granted him
16  leave to file a conforming brief.  (Dkt. No. 92.)  On June 18, 2002, Mr. Gibson filed his third
nonconforming opposition brief.  (Dkt. No. 95.)  On June 22, 2012, this court granted Mr. Gibson's
17  request for additional time, until July 10, 2012, to file a revised brief and reminded Mr. Gibson again
of Local Rule 260(b)'s requirements, along with a repeated warning that "[f]ailure to comply with
18  this order may result in the court taking the government's evidence as the truth and entering
summary judgment for the government, which will strike Mr. Gibson's claim and terminate
19  completely his involvement in this civil forfeiture action." (Dkt. No 97.)  The extended deadline
for Mr. Gibson to file a revised opposition brief passed, and Mr. Gibson failed to file a brief that
20  complies with Local Rule 260(b). Accordingly, the undersigned accepts the government's evidence
as the truth.

21

22                  On July 30, 2012, Mr. Gibson filed a "Request for Clarification" of this court's June
22, 2012 Order.  (("Request") Dkt. No. 100.)  In this Request, Mr. Gibson asks the court to tell him
23  "where it found a 'Statement of Undisputed Facts' in the Government's Motion filed February 4,
2012."  (Request at 1.)  Mr. Gibson's Request is untimely, as it was filed weeks after his second
24  extended deadline to file a conforming opposition to the government's Motion.  Moreover, in the
orders this court has filed reminding Mr. Gibson of Local Rule 260(b)'s requirement that he file an
25  itemized response to the government's Statement of Undisputed Facts, this court has provided Mr.
Gibson a citation to the docket number and document number of such Statement of Undisputed Facts
26  (Dkt. No. 92 at 4; Dkt. No. 97 at 2.)  Accordingly, no further "clarification" is required in response
to this untimely Request by Mr. Gibson.

1  Justice, Bureau of Narcotic Enforcement, responded to a call from the UPS shipping facility,

2  located at 1380 Shore Street, West Sacramento, reporting that a shipping package then being

3  audited was found to contain a large amount of U.S. Currency.  (SOF 2.)  Upon inspection of the

4  package, Agent Fichtner observed that the currency was packaged inside vacuum-sealed bags and

5  had a return address of: Josh Howell, UPS Store #4348, 2121 Natomas Crossing Drive,

6  Sacramento, CA 95834, and a mailing address of: Jeff Howell, 2913 McKee Road, Charlotte, NC

7  28270.  (SOF 3.)

8          The large amount of currency was packaged inside vacuum-sealed bags.  (SOF 4.)

9  A later bank count of the defendant currency totaled $658,830.00.  (SOF 4.)

10          A drug-detection dog gave a positive alert to the shipping package and then again

11  announced a positive alert after the defendant currency was unsealed from the vacuum-sealed

12  packaging.  (SOF 5.)  The package containing the vacuum-sealed $658,830.00 was mailed on

13  Friday October 8, 2010, for delivery on Saturday October 9, 2010, one of the most expensive

14  rates offered by UPS.  (SOF 6.)  The shipping cost was $373.45, paid in cash.  (SOF 6.)

15          On October 11, 2010, North Carolina officers executed a search warrant for the

16  purported "Jeff Howell" residence located at 2913 McKee Road, Charlotte, North Carolina, and

17  found approximately 4.9 grams of marijuana, approximately 2.5 grams of cocaine, approximately

18  10 tablets of Darvacet (Schedule 4 controlled substance), and large plastic bags containing

19  marijuana residue.  (SOF 7.)  James Medina was the record owner of the property searched.

20  (SOF 7.)  North Carolina officers learned from a confidential informant that Medina is the sole

21  resident of 2913 McKee Road, Charlotte, North Carolina, and that Medina was involved in the

22  sale and distribution of marijuana.  (SOF 8.)  When contacted by telephone by North Carolina

23  law enforcement, Medina denied any knowledge of any package shipped to him and has failed to

24  meet with officers.  (SOF 8.)

25          Between October 9, 2010, and October 11, 2010, Agent Fichtner, posing as a

26  helpful UPS employee, spoke on the telephone several times with persons identifying themselves

3

1   as Jason Howell and Jeff Howell, who sought information about the package.  (SOF 9.)  On

2   October 11, 2010, Agent Fichtner disclosed to "Jeff Howell" that the package had been damaged

3   during shipping, and a large amount of currency had been found, the individual hung up.  (SOF

4   10.)  Agent Fichtner then called the various telephone numbers provided to him earlier by "Jason

5   Howell" and "Jeff Howell" but no one answered.  (SOF 10.)

6          Agent Fichtner and other BNE agents checked the address provided to Agent

7   Fichtner by "Jason Howell" when he believed Fichtner, as a UPS employee, was going to return

8   the package to him at 4500 Truxel Road, Apt. 1322, Sacramento, California.  (SOF 11.)  Agents

9   received no answer at the apartment and the apartment complex manager told agents that

10   apartment 1322 was vacant.  (SOF 11-12.)  The apartment manager further stated that there was

11   no one by the name of Josh, Jason, or Jeff Howell that had lived in that apartment, and no one by

12   that name currently lives in the complex.  (SOF 12.)

13          B.     Procedural Background[3]

14          The United States commenced this civil forfeiture action by filing its Verified

15   Complaint for Forfeiture *In Rem* on April 11, 2011.  (SOF 13.)  The Verified Complaint

16   alleges that the defendant currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6)

17   because it was "furnished or intended to be furnished [...] in exchange for a controlled substance"

18   or represented proceeds "traceable to such an exchange" or moneys "used or intended to be used

19   to facilitate [a] violation of" the Controlled Substances Act.  (SOF 14.)

20          On April 21, 2011, Mr. Gibson filed a claim in rem and answer, asserting that he

21   is the owner of the defendant currency.  (SOF 17.)  According to Mr. Gibson, "Josh Howell" is a

22   trusted family member and "bailee." and the currency is "proceeds from the liquidation" of Mr.

23   Gibson's father's estate.  (SOF 17.)  On May 11, 2011, Mr. Gibson filed a supplement to his

24   claim, again representing that he is the owner of the defendant currency, that "Josh Howell" is a

25   _____

26          [3] This procedural history covers only the development of facts related to the government's
     Motion.

                                          4

1  trusted family member and "bailee," and the currency is "proceeds from the liquidation" of his

2  father's estate.  (SOF 18.)

3  Because the claim on its face appeared to raise significant issues regarding

4  whether Mr. Gibson had standing to contest the forfeiture, the United States, on May 20, 2011,

5  served a set of eighteen special interrogatories pursuant to Rule G(6) of the Supplemental Rules.

6  (SOF 19.)  The special interrogatories sought information about the claimant's identity and

7  relationship to the defendant property and advised that responses were due within twenty-one

8  days of receipt of the interrogatories.  (SOF 20.)  The special interrogatories were sent to Robert

9  D. Gibson at Salinas Valley State Prison.  (SOF 20.)

10  On June 30, 2011, the United States moved to strike Mr. Gibson's claim and

11  answer based on his failure to provide timely discovery responses.  (SOF 21.)

12  Mr. Gibson opposed the motion on July 11, 2011, but did not answer any of the

13  special interrogatories.  (SOF 22.)

14  On October 31, 2011, the court ordered Mr. Gibson to provide responses to the

15  special interrogatories within twenty-one days.  (SOF 23.)  In the event Mr. Gibson failed to

16  provide discovery responses, the court stated that United States "may file another motion to

17  strike" and the court will "recommend that the motion to strike be granted."  (SOF 23.)

18  On November 16, 2011, Mr. Gibson served answers to the special interrogatories,

19  which are excerpted below.  (SOF 23.)

20  C.  Responses to Interrogatories[4]

21  i.  Special Interrogatory No. 1:

22  The government presented Mr. Gibson with special interrogatory No. 1:

23  Please state your full name, all prior names used (including aliases or
   nicknames), your social security number, your date of birth, and all

24  of your addresses for the last five (5) years. Include the inclusive

25  ─────────────────

26  [4]  The following are excerpted examples of the government's special
interrogatories along with the claimant's responses.

5

1    months and years lived at each address.

2 (SOF 49.)

3    Mr. Gibson's Response to Special Interrogatory No. 1:

4    Robert Douglas Gibson SSN: [Redacted] Address: 31625 Hwy # 101,
     California State Prison at Salinas Valley.

5
     I am also the Fictious Consignee of the package in question, "Jeff
6    Howell"

7 (SOF 50.)

8         ii.    Special Interrogatory No. 3:

9    The government presented Mr. Gibson with special interrogatory No. 3:

10   Please state whether you claim to have been holding the defendant
     currency for another person(s), or that you claim to be the true owner
11   of the defendant currency.

12 (SOF 45.)

13   Mr. Gibson's response to Special Interrogatory No. 3:

14   I am the true owner of the seized currency.

15 (SOF 46.)

16        iii.   Special Interrogatory No. 4:

17   The government presented Mr. Gibson with special interrogatory No. 4:

18   If you claim to have been holding the defendant currency for another
     person(s), please identify that person(s) by their complete name(s),
19   their home address(es), their business/work address(es), their home
     telephone number(s) and their business telephone number(s).
20

21 (SOF 47.)

22   Mr. Gibson's response to Special Interrogatory No. 4:

23   I am the true owner of the seized currency.

24 (SOF 48.)

25        iv.    Special Interrogatory No. 6:

26   The government presented Mr. Gibson with special interrogatory No. 6:

6

1
2  Please state **in detail** how you came into the possession or ownership of each and every specific part or portion of the defendant currency.

3  (SOF 25.)

4  Mr. Gibson's response to Special Interrogatory No. 6:

5  By way of sole lawful heir to the Estate of the person of James Henry Warren, deceased 2009 Louisville, Kentucky born Jan 14th, 1945 to
6  Katie and Zelpha Warren.

7  Asset History: S.W. Argyll Investments and Equities, 12380 Stowe Drive, Poway, CA. 92064, James T. Miceli C.E.O. Acct; closed 2008.
8  Morgan Stanley, Smith, Barney brokerage Acct: #04-HOCT-L-6 and #04-HHCI-B-4.

9
10  Bank of Choice, 5830 w. Flamingo Road, Las Vegas Acct: 6319122105 closed 2009.

11  Sale of limited partnership in General Motors Dealership 43632 Schoenherr and Canal Road, Detroit Michigan. dissolved 2004.

12

13  (SOF 26.)

14  v.   Special Interrogatory No. 8:

15  The government presented Mr. Gibson with special interrogatory No. 8:

16  Please 1) identify by full name, full address, home telephone number and work telephone number from whom you received each part or
17  portion of the currency; 2) state the date and location of your receipt of each part or portion of the currency; 3) state the terms of the
18  transfer (gift, loan, etc.), and, 4) state with particularity all documents that pertain to the source(s) or origination of the defendant currency.

19

20  (SOF 27.)

21  Mr. Gibson's response to Special Interrogatory No. 8:

22  Objection, this is a compound question, in 3 parts, and they are vague and ambiguous but to the best of my ability to understand.
23
24  Argyll Investments 2009 (see interrogatory #6)
     Bank of Choice acct: #6319122105

25  Money was held in Private Vault, until October 2010, 24/7 Private Vaults, 3110 East Sunset Road. Vault No. #0905 Las Vegas, Nevada.
26

1       * Note: Bank of Choice went insolvent 2011, call the United States
2       Comptroller of Currency Office; 904-256-3925 Bank of Choice, HQ-
    Greenly, Colorado.

3

(SOF 28.)

4
    vi.    <u>Special Interrogatory No. 9:</u>
5
    The government presented Mr. Gibson with special interrogatory No. 9:
6

7       Please state why on or about October 8, 2010 you did not have the
    defendant currency in your possession. Further, identify the person(s)
    who did have possession on or about that date, including such
8       person's name, home address, work address, home telephone number
    and work telephone number.

9

10  (SOF 29.)

11      Mr. Gibson's response to Special Interrogatory No. 9:

12      I object to the relevancy of the Gratuitous Bailee's identity.

13      I am incarcerated, and the money was held in a private vault (see
    interrogatory no. 8)
14

15  (SOF 30.)

16      vii.    <u>Special Interrogatory No. 10:</u>

17      The government presented Mr. Gibson with special interrogatory No. 10:

18      Please identify your relationship to Josh Howell (if familial, please
    provide the specific association, i.e., cousin, sibling, father-son, etc.);
19      further provide Josh Howell's full name, date of birth, current home
    address, current home telephone number, current cell phone number,
20      current work address and current work telephone number.

21  (SOF 31.)

22      Mr. Gibson's response to Special Interrogatory No. 10:

23      I object as to Relevancy, this information is not reasonably design to
    prove or disprove the ownership of seized property
24

25  (SOF 32.)

26  ////

1        viii.    Special Interrogatory No. 12:

2        The government presented Mr. Gibson with special interrogatory No. 12:

3        Please provide identify and produce copies of all documentation concerning any inheritance forming the basis for the claim filed in

4        this case (particularly, identify the probate court and attorneys of record in the probate case). If the any inheritance was distributed

5        directly in cash, please identify the beneficiaries, each beneficiary's share, how the beneficiaries were paid, when the beneficiaries were

6        paid, as well as the distributing party, institution or entity.

7  (SOF 33.)

8        Mr. Gibson's response to Special Interrogatory No. 12:

9        I object to the relevancy of this question, but there was an informal will and understanding between family members.

10

11  (SOF 34.)

12        ix.    Special Interrogatory No. 16:

13        The government presented Mr. Gibson with special interrogatory No. 16:

14        List all bank/financial institution accounts into, from or through which the defendant currency has passed during your ownership or

15        possession. Please include each institution's name, full address and the account number(s).

16

17  (SOF 35.)

18        Mr. Gibson's response to Special Interrogatory No. 16:

19        Morgan, Stanley, Investments.
          101 Broadway, Suite #1800 San Diego, Ca.

20        Acct: #04-HOCT-L-6 and #04-HH-CI-B-4

21        Bank of Choice, 5830 W. Flamingo Road.
          Las Vegas, Nv Acct: #6319122105

22

23  (SOF 36.)

24        x.    Special Interrogatory No. 17:

25        The government presented Mr. Gibson with special interrogatory No. 17:

26        List the full name(s), current address(es) and home and work

telephone numbers of all persons having knowledge of, or information pertaining to, your acquisition, possession and/or ownership of the defendant currency.

(SOF 37.)

Mr. Gibson's response to Special Interrogatory No. 17:

Zelpha Warren Jr./Brother of James Warren
105 s. 37th Street, Louisville, Kentucky
Tel. 502-690-0050 502-712-0027

Renee Markham; Tel. 1-480-278-5879

Tynisha Hornbuckle
5351 47th Avenue, Apt #290
Sacramento, Ca. Tel. listed.
James T. Miceli Tel. listed.

(SOF 38.)

    D.    <u>24/7 Private Vaults</u>

On December 9, 2011, the United States Attorney's Office, Eastern District of California, contacted Private Vaults located at 3110 E. Sunset Road, Las Vegas, Nevada for information regarding Vault No. 0905.  (SOF 39.)  Specifically, the request focused on "ownership and access information corresponding to Vault No. 0905 throughout the 2010 calendar year, with a particular emphasis on October 2010."  (SOF 39.)

On December 14, 2011, 24/7 Private Vaults, located at 3110 E. Sunset Road, Las Vegas, Nevada, responded that Box No. 0905 does not (and did not) exist at its facility.  (SOF 40.)

    E.    <u>Bank of Choice</u>

On December 13 and 14, 2011, the United States Attorney's Office, Eastern District of California, contacted Bank of Choice for information regarding customers Robert Douglas Gibson and/or James Henry Warren, as well as account number 6319122105 (closed in 2009).  (SOF 41.)

////

10

1         On December 14, 2011, Bank of Choice responded that neither Robert Douglas

2   Gibson nor James Henry Warren maintained a banking relationship with Bank of Choice in 2009.

3   (SOF 42.)  Bank of Choice further stated that account number 6319122105 is not a valid Bank of

4   Choice account number.  (SOF 42.)

5        F.   <u>Morgan Stanley Smith Barney</u>

6         On December 14, 2011, the United States Attorney's Office, Eastern District of

7   California, contacted the Custodian of Records for Morgan Stanley Smith Barney regarding the

8   validity/existence of two accounts purportedly maintained at their institutions: (1) 04-HOCT-L-6;

9   and (2) 04-HHCI-B-4.  (SOF 43.)  Specifically, the request focused on whether "Robert Douglas

10  Gibson [...]and/or James Henry Warren [...] were the relevant account holders."  (SOF 43.)

11        On January 26, 2012, Morgan Stanley Smith Barney responded that neither Robert

12  Douglas Gibson nor James Henry Warren were associated with account number 04-HOCT-L-6.

13  (SOF 44.)  Morgan Stanley Smith Barney further stated that account number 04-HHCI-B-4 is not

14  a valid account number.  (SOF 44.)

15       G.   <u>Alleged Individuals With Knowledge of Mr. Gibson's Ownership/Possession</u>

16          i.   <u>Renee Markham</u>

17        In January 2012, Deputy U.S. Marshal Todd Guendert attempted to contact Ms.

18  Markham at the telephone number provided by the claimant in interrogatory no. 17.  (SOF 51.)

19  The number was disconnected or no longer in service.  (SOF 51.)

20          ii.   <u>Tynisha Hornbuckle</u>

21        In February 2012, Deputy U.S. Marshal Todd Guendert attempted to contact Ms.

22  Hornbuckle at the address provided by the claimant, 5351 47th Avenue, Apt #290, Sacramento,

23  CA.  (SOF 52.)  An individual named "Latasha Jackson" answered the door and told Deputy

24  Guendert that she moved into the apartment in October 2011.  (SOF 52.)  Ms. Jackson was not

25  familiar with either Tynisha Hornbuckle or the claimant.  (SOF 52.)  The apartment manager

26  could not find any record for a resident named Tynisha Hornbuckle.  (SOF 52.)

In February 2012, Deputy Guendert attempted to contact Ms. Hornbuckle at a second known address, 3911 37th Avenue, Sacramento, CA.  (SOF 53.)  The apartment resident stated Ms. Hornbuckle did not live there, but she occasionally received mail for Tynisha Hornbuckle which was returned to postal employees.  (SOF 53.)

        iii.    <u>Zelpha Warren, Jr.</u>

On December 15, 2011, Deputy U.S. Marshal John Schaaf attempted to contact Mr. Warren at the address and telephone number provided by the claimant in interrogatory no. 17.  (SOF 54.)  Mr. Warren called Deputy Schaaf the same day (from a different phone number), refusing to disclose his address but agreeing to answer questions about his brother, James Warren, and his nephew, Robert D. Gibson.  (SOF 54.)  Mr. Warren told Agent Schaaf that his brother never owned or worked at a car dealership and died without any assets.  (SOF 54.)  Mr. Warren had no knowledge of any funds or assets deposited by either Warren or the claimant at Morgan Stanley, Bank of Choice, S.W. Argyll Investments, or Private Vaults in Las Vegas, Nevada.  (SOF 54.)

Subsequent attempts by the U.S. Marshals Office in Louisville to contact Mr. Warren to secure a signature on a declaration summarizing the December 15, 2011 telephone interview were unsuccessful.  (SOF 55.)

        iv.    <u>James T. Miceli</u>

The claimant did not provide a telephone number or address for Mr. Miceli.  (SOF 38.)  In December 2011 and January 2012, Deputy Guendert attempted to contact Mr. Miceli at 1-858-592-2320, the number for "Argyll Investments," but each attempt was unsuccessful.  (SOF 56.)  Deputy Guendert subsequently discovered that Mr. Miceli and Argyll Equities were involved in an SEC action in the Northern District of Illinois, and the SEC attorney referred the inquiry to Mr. Miceli's counsel.  (SOF 56.)

In February 2012, the United States Attorney's Office, Eastern District of California, contacted Mr. Miceli's legal counsel for information regarding Robert Douglas

1  Gibson and/or James Henry Warren.  (SOF 57.)  Counsel responded that they have no

2  information to provide on the matter.  (SOF 58.)

3  II.    ANALYSIS

4         A.    Mr. Gibson Has Failed To Establish Article III Standing

5              In order to meet the case-or-controversy requirement of Article III, a plaintiff

6  (including a civil forfeiture claimant) must establish the three elements of standing, namely, that

7  the plaintiff suffered an injury in fact, that there is a causal connection between the injury and the

8  conduct complained of, and that it is likely the injury will be redressed by a favorable decision.

9  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also United States v. 5208 Los

10  Franciscos Way, 385 F.3d 1187, 1191 (9th Cir. 2004).  Claimants in civil forfeiture actions can

11  satisfy this test by showing that they have "a colorable interest in the property," 5208 Los

12  Franciscos Way, 385 F.3d at 1191, which includes an ownership interest or a possessory interest,

13  United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 637-39 (9th Cir. 2012).

14             To withstand a motion for summary judgment on the ground that the plaintiff

15  lacks standing, a plaintiff cannot rely on mere allegations but rather must "'set forth' by affidavit

16  or other evidence 'specific facts,' which for purposes of the summary judgment motion will be

17  taken to be true."  Lujan, 504 U.S. at 561 (citation omitted) (quoting Fed. R. Civ. P. 56(e)).  At

18  the summary judgment stage, the district court must ask itself whether "a fair-minded jury" could

19  find that the claimant had standing on the evidence presented.  See Anderson v. Liberty Lobby,

20  Inc., 477 U.S. 242, 252 (1986); United States v. $42,500.00, 283 F.3d 977, 983 (9th Cir. 2002).

21  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

22  insufficient; *there must be evidence on which the jury could reasonably find for the plaintiff*."

23  Anderson, 477 U.S. at 252 (emphasis added).   In a civil forfeiture action, a claimant's bare

24  assertion of an ownership or possessory interest, in the absence of some other evidence, is not

25  enough to survive a motion for summary judgment.  $133,420.00, 672 F.3d at 638.  "[A]

26  conclusory, self-serving affidavit, lacking detailed facts and *any supporting evidence*, is

13

1    insufficient to create a genuine issue of material fact."  Id. (quoting FTC v. Publ'g Clearing

2    House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (emphasis added)).

3            A claimant asserting an ownership interest in the defendant property, therefore,

4    must also present "some evidence of ownership" beyond the mere assertion in order to survive a

5    motion for summary judgment.  $133,420.00, 672 F.3d at 639.  The fact that property was seized

6    from the claimant's possession, for example, may be sufficient evidence, when coupled with a

7    claim of ownership, to establish standing at the summary judgment stage.  See $148,840.00, 521

8    F.3d at 1277 ("[B]ecause [claimant's] assertion of ownership is assumed to be true on this

9    record, and because the currency was indisputably seized from a vehicle that [claimant] was

10   driving, we hold that [claimant] has established constitutional standing at this stage of the

11   litigation.").  Similarly, a claimant asserting a possessory interest must provide some "evidence

12   supporting his assertion that he has a lawful possessory interest in the money seized" to survive a

13   summary judgment motion.  $133,420.00, 672 F.3d at 639 (quoting United States v.

14   $321,470.00, 874 F.2d 298, 303 (5th Cir.1989)).

15           Mr. Gibson has not established a colorable interest in the defendant property.  He

16   affies without supporting evidence that he is the "true owner" of the seized currency (SOF 46),

17   but he has shown neither an ownership or possessory interest in the defendant property.  The

18   currency was not in Mr. Gibson's possession at the time it was seized; it was at a UPS shipping

19   facility.  (SOF 2.)  The currency was not addressed to Mr. Gibson's attention and Mr. Gibson

20   was not the originating sender.  (SOF 3.)  Mr. Gibson asserts ownership of the defendant

21   property on the basis it was his father's money and Mr. Gibson became the "sole lawful heir" to

22   the money upon his father's death in 2009 (SOF 26), based not on written instrument but instead

23   an "informal will and understanding between family members," (SOF 34).  The trail of bank

24   accounts and vaults that Mr. Gibson affies, without further evidentiary support, that the

25   defendant property traveled from his father's estate on its way to Mr. Gibson has been thoroughly

26   disproved through documentary evidence submitted to the court by the government.  (See SOF

                                                14

1  39-58.)

2         **B.**   <u>Mr. Gibson Has Failed To Establish Statutory Standing</u>

3         A claimant seeking to contest a civil forfeiture must demonstrate both Article III

4  and statutory standing.  <u>United States v. One 1985 Cadillac Seville</u>, 866 F.2d 1142, 1148 (9th

5  Cir. 1989).  To establish statutory standing, the claimant must comply with the procedural

6  requirements provided for in the Supplemental Rules.  <u>See United States v. Real Property</u>

7  <u>Located In Fresno County</u>, 135 F.3d 1312, 1316-17 (9th Cir. 1998) (holding that failure to

8  comply with Supplemental Rules precluded claimant from establishing standing in forfeiture

9  action); <u>see also</u> <u>United States v. $487,825.00 in U.S. Currency</u>, 484 F.3d 662, 664 (3d Cir.

10  2007) ("To establish statutory standing in a forfeiture case, the claimant must comply with the

11  procedural requirements set forth in [Supplemental Rule G].")  Supplemental Rule G(5) requires,

12  *inter alia*, that a claim "identify the claimant and state the claimant's interest in the property."

13  Supp. R. G(5)(a)(i)(B).  Rule G(5)(iii) further requires that "[a] claim filed by a person asserting

14  an interest as a bailee must identify the bailor, and if filed on the bailor's behalf must state the

15  authority to do so."  Supp. R. G(5)(a)(iii).  Here, Mr. Gibson's claim twice refers to "his 'Bailee'

16  'Josh Howell,'" but does not identify a bailor.  (Dkt. No. 10, at 1-2.).[5]  Accordingly, to the extent

17  Mr. Gibson claims his interest in the defendant property as bailee or otherwise under a bailment

18  theory, the undersigned recommends that the government's Motion to Strike (Dkt. No. 77) be

19  granted due to Mr. Gibson's failure to comply with Rule G(5).[6]  <u>See</u> Supp. R. G(8)(c)(i)(A).

20  _____

21       [5]  In his Opposition, Mr. Gibson asserts that he is the "'Bailor' and lawful owner."
22  (Opposition at 9.)  As discussed above, Mr. Gibson has failed to show that he has an ownership or
    possessory interest in the defendant property.

23       [6]  Mr. Gibson also challenges the merits of the government's forfeiture action.  (Opposition
    at 3.)  Whatever the substantive merits of government's forfeiture action, Mr. Gibson may not
24  challenge them because he lacks a sufficient interest in defendant property to have standing.  <u>United</u>
    <u>States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, CA</u>, 385 F.3d 1187, 1193-94
25  (9th Cir. 2004); <u>United States v. Fifteen Thousand Five Hundred Dollars ($15,500) U.S. Currency</u>,
    558 F.2d 1359, 1361 (9th Cir.1977) (holding that when a claimant fails to establish the threshold
26  requirement of standing, the claimant's challenges to the merits of the forfeiture action cannot be

III.    CONCLUSION

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that this court grant the government's Motion to Strike for Failing to Comply With Supplemental Rules, or, Alternatively, for Summary Judgment.  (Dkt. No. 77.)

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

DATED:  August 3, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

reached).

16